AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

Samsung Galaxy S7 edge cell phone, gold in color, Model SM-G935T, IMEI 356164076516677; Cricket Galaxy Amp prime cell phone, white in color, Model SM-J320A2, Build # MMB29KJ320A2TUS3AQD2; Samsung cell phone, black in color, Model SM-J327T1, Build # NRD90M J327T1UVU1AQF7.    **Case No. 19-mj-1003**

## APPLICATION FOR SEARCH WARRANTS

    I, a federal law enforcement officer or an attorney for the government, request search warrants and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

    See **Attachment A**, attached hereto and incorporated herein by reference as though set forth fully herein.

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:

    The items set forth in the Schedule of Items to be Searched for and Seized, attached hereto as **Attachment B** and incorporated herein by reference as though set forth fully herein.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846.

The application is based on these facts:
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DAVID J. TURNER
Special Agent
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 6 , 2019

*Judge's signature*

HONORABLE JEREMIAH J. McCARTHY
United States Magistrate Judge
*Printed name and Title*

City and state: Buffalo, New York

## ATTACHMENT A

## ITEMS TO BE SEARCHED

### TELEPHONE 1

Samsung Galaxy S7 edge cell phone, gold in color, Model SM-G935T, IMEI 356164076516677



### TELEPHONE 2

Cricket Galaxy Amp prime cell phone, white in color, Model SM-J320A2, Build # MMB29KJ320A2TUS3AQD2



### TELEPHONE 3

Samsung cell phone, black in color, Model SM-J327T1, Build # NRD90M J327T1UVU1AQF7



## ATTACHMENT B

## SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items comprising evidence of, or property designed for use, intended for use, or used in committing violations of Title 21, United States Code, Sections 841(a)(1) and 846 consisting of:

a)     records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to cocaine trafficking, and photographs and videos regarding cocaine trafficking and cocaine trafficking associates contained in the cellular telephones;

b)     text messages and emails contained in the cellular telephones related to cocaine trafficking and cocaine trafficking associates;

c)     records regarding the ownership and/or possession of the searched items; and

d)     Electronic information, data, addresses, maps, and recordings of travels, destinations, intended travels, approximate ground position by utilizing satellites, including historical information, navigation routes, satellite waypoints, saved addresses, destination points, location, speed, and other positioning data.

**AFFIDAVIT**

STATE OF NEW YORK   )
COUNTY ERIE              )        SS:
CITY OF BUFFALO       )

    **DAVID J. TURNER**, Special Agent with the Drug Enforcement Administration, United States Department of Justice, having been duly sworn, states as follows:

    1.    I am a Special Agent ("SA") with the Drug Enforcement Administration ("DEA") and as such, I am an "investigative or law enforcement officer" of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substance Act of 1970, Title 21 of the United States Code, as amended.   As a DEA Special Agent, your affiant is also an investigative law enforcement officer of the United States of America within the meaning of Title 18, United States Code, Section 2510(7).   I have been employed by the DEA since January 2006.

    2.    As part of my employment with the DEA, I successfully completed formalized training at the U.S. Department of Justice Training Facility, Drug Enforcement Administration Training Academy.   During this training, I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, drug packaging, pricing, importation, and trafficking methods.   In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods.   I received legal instruction in Federal drug conspiracy laws, preparing

drug affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants.   Based on my training and conversations with other DEA special agents and task force officers, I am familiar with how controlled substances are cultivated, manufactured, processed, packaged, distributed, sold, and used within the framework of drug trafficking.

3.     I have participated in numerous investigations that have targeted violators of Federal and New York State narcotics laws. I also have participated in several investigations involving wiretaps and have reviewed taped conversations and drug records pertaining to narcotics trafficking.   I have also participated in numerous debriefings of narcotic traffickers, cooperating individuals ("CIs"), and sources of information ("SOIs").

4.     I submit this affidavit in support of the application for search warrants for three cellular telephone devices and their subscriber identity module card (SIM cards) and component parts ("Items to be Searched"), all of which were seized on July 28, 2017, during the arrest of Darryl M. GREENE and Jeffrey David HODGE in Buffalo, NY, and are in the custody of the DEA.   The items to be searched are identified as follows and more particularly described in Attachment A ("Items to be Searched"):

    a.    a gold Samsung Galaxy S7 edge cell phone (hereinafter referred to as "Telephone 1");

    b.    a white cricket Galaxy Amp prime cell phone (hereinafter referred to as "Telephone 2");

    c.    a black Samsung cell phone (hereinafter referred to as "Telephone 3");

2

5.    My investigative experience detailed herein, and the experience of other law enforcement agents and officers who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.   This affidavit is being submitted for a limited purpose, that is, a probable cause determination relative to the requested search warrants. Therefore, I have not presented all of the facts of this investigation to date.   I have set forth only the information I believe to be necessary to establish probable cause that the Items to be Searched are evidence of, were used in committing, and/or contain evidence/fruits/instrumentalities of violations of Title 21, United States Code, Sections 841(a)(l), 841(b)(1)(B) and 846.

## **PROBABLE CAUSE**

6.    On or about July 27, 2017, the U.S. Postal Inspection Service ("USPIS") in Buffalo, NY obtained a federal search warrant for a suspicious postal package addressed to "David Hodge, 125 Kensington Ave., Buffalo, NY 14214" with a return address of "David Anderson, 3341 Riviera Dr., San Diego, CA 92109." The Priority Mail parcel was mailed from National City, CA 91950 (hereinafter "Subject Parcel #1"). Phone number 510-677-4995 was associated with the sender of Subject Parcel #1 and phone number 716-816-8787 was associated with the recipient of Subject Parcel #1 per information provided by USPIS agents.

7.    On or about July 27, 2017, the USPIS executed the search warrant on Subject Parcel #1 and found it contained approximately 1 kilogram of a white powder substance that field-tested positive for cocaine.   The package, which was a cardboard box, contained another small cardboard box buffered with small packing Styrofoam. The small cardboard

3

box contained a red cloth over silver metallic foil bearing the red logo "Flex Fit," which was wrapped around the black tape. Under the black tape, there were two plastic bags containing one kilogram of cocaine.

8.     On or about July 28, 2017, USPIS and the DEA members conducted a controlled delivery of Subject Parcel #1, which was equipped with a transmitter device, to 125 Kensington Ave., Buffalo, NY.   Minutes before law enforcement delivered Subject Parcel #1, law enforcement on surveillance observed HODGE standing in the doorway of 125 Kensington Ave. A USPIS agent, acting in an undercover capacity and having a covert audio recorder, delivered Subject Parcel #1 to HODGE at 125 Kensington Ave. and recorded the transaction. HODGE accepted the package and stated, in sum and substance, that he had been waiting for the package for a while. HODGE took Subject Parcel #1 into 125 Kensington Ave.   A short time later, HODGE exited the residence without Subject Parcel #1. HODGE, now dressed in different clothes, began walking west on Kensington Ave.   A short time later, HODGE returned to the residence and entered.   A black GMC arrived shortly after, and parked in front of the residence. The driver of the vehicle was later identified as GREENE. HODGE exited the residence carrying Subject Parcel #1 and passed it through the passenger side window of the GMC to GREENE.

9.     GREENE, in possession of Subject Parcel #1, departed the residence in the GMC.   The total time from when HODGE accepted Subject Parcel #1 to the time GREENE departed with it was approximately 5 minutes.   Law enforcement arrested GREENE in his vehicle shortly after GREENE left HODGE's residence with Subject Parcel #1.   Law enforcement recovered Subject Parcel #1, which was still equipped with the

4

transmitter device, on the passenger seat of GREENE's GMC at the time of the arrest. HODGE was also arrested at this time.

10.     GREENE waived his <u>Miranda</u> rights and stated that he had no knowledge of the contents in the Subject Parcel #1 and that HODGE had asked GREENE that day to hold the package as a favor. GREENE further stated that HODGE was a friend of his and that HODGE often asked him to hold things for him, such as sneakers or glasses. GREENE stated that this was the first time that HODGE had asked him to hold a postal package. GREENE stated that he had gone to the Post Office to inquire into the status of Subject Parcel #1. GREENE stated that he did this to help HODGE, as HODGE could not present a package tracking number to the Post Office. When asked where GREENE lived, GREENE stated that he lived with his mother at 1631 Hertel Ave., Buffalo, New York, but added that he was not allowed to live there, as it was a senior living facility. The address of 1631 Hertel Ave. Buffalo, NY 14216 is also listed on GREENE's New York State learner's permit, which the state issued on January 2, 2014 and expired on May 14, 2018.

11.     Subsequent to GREENE's interview, GREENE gave the DEA permission[1] to examine two cell phones that agents recovered from GREENE's GMC. GREENE stated they were his phones and signed a consent form authorizing law enforcement to search the two phones. Law enforcement attempted a digital exploitation of GREENE's phones, but failed. A manual examination of the phones revealed a series of text correspondence, which, based on my training and experience is consistent with communications typical of drug dealers

---

[1] While GREENE consented to the search of his phones, your Affiant is nonetheless seeking search warrants out of an abundance of caution.

regarding their drugs and drug proceeds. Relevant excerpts from the text correspondence are detailed below as follow:

a.      Between the beginning of July 2017 to the end of July 2017, GREENE had a text conversation with 510-677-4995 ("4995"), which is a phone number associated with the sender of   Subject Parcel #1. Below are excerpts from this text conversation:

- 4995 "Can you send that Walmart"

- GREENE "Give me a call"

- GREENE "I don't speak around her, trying to choose my words"

- 4995 "I feel you"

- 4995 "I be there this week Thursday"

- GREENE "Okay, that'll be good"

- 4995 "1300 Monique"

- 4995 "My bad 2 and put 450 in Boa"

- [photo of Walmart money receipt dated 07-10-2017 for $2,000.00 from Darryl GREEN, 1631 Hertel Ave, 7165972057 to Monique GREENE. Destination state California]

Your affiant believes the user of 4995 instructed GREENE to send money via Walmart which corresponds to the pictured receipt. Additionally, the utilizer of 4995 instructed GREENE to also put money into a Bank of America Account as demonstrated by reference to "Boa."

b.      GREENE further engaged in the following text message exchange with the user of phone number 510-677-4995:

- GREENE "I need the account # and Fat boy wanted to know if we had a half"

- 4995 [Account number provided]

- 4995 [Account number provided]

- 4995 "See if he still want the half"

- GREENE "Okay"

- GREENE "He sorting now, have to wait"

- 4995 "This maybe to much for you"

- GREENE "If you think so stop sending it,"

- GREENE "I'm not about to go back and forth"

Your affiant believes GREENE asked the user of 4995 for a bank account number to put money into. Additionally, GREENE explained that "Fat boy" wanted one-half kilogram of cocaine. The user of 4995 provided the bank account number and then asked if Fat boy still wanted the one-half kilogram of cocaine. When GREENE said that they were not ready, the user of 4995 questioned GREENE's ability to sell the cocaine, saying that it may be too much for GREENE. GREENE responded by telling the user of 4995 to stop sending cocaine if they thought it was too much.

c.    In addition, GREENE and the user of phone number 510-677-4995 had the following text message exchange:

- GREENE "You must don't have the other one"

- [photo of Walmart money receipt dated 07-15-2017 for $1,000.00, from Darryl Maurice Green, 65 Beverly Rd, Buffalo, NY, 7046489265 to Sharieff GREENE, destination state California.

- GREENE "Did you get that,"

- 4995 "Yeah"

- GREENE "Okay"

Your affiant believes that this text message exchange shows that GREENE did not think that the user of 4995 had the other receipt for GREENE's money transaction. GREENE then sent a picture of the receipt and confirmed that the user of 4995 received it.

     d.    GREENE had the following text message exchange regarding Subject Parcel #1 and another parcel containing cocaine, described below as "Subject Parcel #2."

- GREENE "Do I need to know the name"
- 4995 "What name"
- GREENE "He walked to the store"
- 4995 "9505515054817206133605"
- "That got updated for tomorrow"
- "David Hodge is on the box"
- "Yes"

Your affiant believes that the user of 4995 sent GREENE the tracking number for an additional parcel that UPSIS seized and opened on August 3, 2017, which contained one-half kilogram of cocaine (see below). Your affiant notes that the number texted by the user of 4995 to GREENE was one digit off from the actual tracking number of the parcel. The user of 4995 then informed GREENE that the name "David Hodge" would be the name on Subject Parcel #1.


     12.    Subsequent to his interview, the DEA asked HODGE for permission to examine one cell phone that was seized from HODGE. HODGE stated the phone was his

and granted permission and signed a consent[2] to search form for the phone. A manual examination of the phone revealed a series of text correspondence, which from my training and experience are consistent with communications typical of drug dealers regarding their drugs and drug proceeds. Relevant excerpts from the text correspondence are detailed below.

      a.     Starting during the end of July 2017, HODGE had a text conversation with 510-677-4995, which is a phone number associated with the sender of Subject Parcel #1 as described above.   Below are excerpts from this text conversation:

- 4995 "9505 5140 64767 20508885"

- 4995 "9505 514064 76720507 8885"

- 4995 "I think you got that"

- 4995 "Be out there by 7"

- 4995 "Don't leave stay outside"

- HODGE "Ok"

Your affiant believes that the user of 4995 sent HODGE the tracking number for Subject Parcel #1, which UPSIS seized and opened on 07-27-2017 and which contained 1 kilogram of cocaine. The second number texted by the user of 4995 to HODGE was identical to the tracking number for Subject Parcel #1. The user of 4995 then informed HODGE that he should wait outside HODGE's residence to receive Subject Parcel #1 and to "stay outside".

---

[2] While HODGE consented to the search of his phone, your Affiant is nonetheless seeking search warrants out of an abundance of caution.

13.    On August 3, 2017, USPIS members executed a federal search warrant on an additional mail parcel (hereinafter "Subject Parcel #2"). Subject Parcel #2 was addressed to "W. Greene, 1631 Hertel Ave, Buffalo, NY 14216" and contained a return address of "David Anderson, 2905 Nichols St, San Diego, CA 92106."

14.    The USPIS's execution of the warrant revealed that Subject Parcel #2 contained one-half kilogram of a white powdery substance that field-tested positive for cocaine.   The package, which was a cardboard box, contained a smaller cardboard box buffered with packing Styrofoam. Within the smaller box, the USPIS recovered a red cloth wrapping over silver metallic foil bearing the red logo "FlexFit," which contained a plastic bag of one-half kilogram of cocaine.   The one-half kilogram of cocaine was wrapped inside of that in a plastic bag covered with black tape.   This packaging method was almost identical to the packaging method of Subject Parcel #1. See Paragraph 7, supra.

15.    Subject Parcel #2 was addressed to W. Greene, 1631 Hertel Ave, Buffalo, NY 14216. This is the same address that was on GREENE's New York State learner's permit and the Walmart money receipt, it is also the address GREENE gave the DEA when asked where he lived.

16.    The sender's name ("David Anderson") as well as the sender's city ("San Diego") and state (California) were identical for Subject Parcel #1 and Subject Parcel #2.

## ACQUISITION OF ITEMS TO BE SEARCHED

17. As previously described on July 28, 2017, DEA Agents and other law enforcement agencies conducted a controlled delivery of Subject Parcel #1 to HODGE at 125 Kensington Ave., Buffalo, NY. As a result, law enforcement arrested both HODGE and GREENE and seized their cell phones. The DEA seized HODGE's telephone ("Telephone 1") from HODGE's residence at 125 Kensington Ave., Buffalo, NY. The DEA seized GREENE's cell phones ("Telephone 2" and "Telephone 3") from GREENE's vehicle.

## USE OF ELECTRONIC DEVICES BY JEFFREY HODGE AND DARRYL GREENE

18. A cellular or mobile telephone is a handheld wireless device used primarily for communication through radio signals sent through networks of transmitter/receivers called "cells," thereby communicating with other cellular telephones and/or "land line" telephones. A cellular telephone usually has a "call log," which records the number, date, and time of calls made to and from the device. In addition to voice communication, cellular telephones have a broad range of capabilities, including storing names and telephone numbers in electronic address books; sending, receiving, and storing text messages and emails; taking, sending, receiving, and storing photographs and videos; storing and playing audio files; storing appointments and other data on personal calendars; and accessing and downloading information from the Internet. Cellular telephones also may have global positioning system ("GPS") technology used to determine the location of the device. Based on my training and experience in this and other investigations, individuals often use cellular telephones and other electronic devices to communicate with others in furtherance of unlawful activities, including delivery, transportation, storage, and distribution of controlled substances and drug proceeds.

11

19.   Based on my training and my experience, violators often use cellular telephones and electronic devices to evade detection by law enforcement and communicate with fellow co-conspirators.

## AUTHORIZATION TO SEARCH

20.   Based on my training and experience, my participation in this and other investigations, and my discussions with other law enforcement, I have learned that drug traffickers frequently maintain information concerning their unlawful activities, such as text messages, bbm messages, contact information, email addresses, telephone numbers, and photographs, in cellular telephones, GPS devices, laptop computers, and tablet computers. As a result, it is believed that the Items to be Searched are evidence of and contain evidence of violations of Title 21, United States Code, Sections 841(a)(l), 841 (b)(1)(B), and 846. An initial manual search of Telephones 1, 2 and 3 pursuant to consent, demonstrated this to be the case.

21.   Accordingly, authorization is sought to search the Items to Searched for the following, listed on Attachment B:

a.   Records of telephone calls, including incoming, outgoing, and missed calls, contact information, including addresses, email addresses and telephone numbers, documents and files that reflect names, email addresses, email messages, addresses, telephone numbers and objects related to threats, and photographs related to threats and associates;

b.   Records of text messages, bbm messages, and email messages, including incoming and outgoing text messages, bbm messages, and email messages, and the text, bbm, and email messages in the searched items;

12

c.       Records regarding ownership of and/or possession of the Items to be Searched;
and

d.       Electronic information, data, addresses, maps, and recordings of travels,
destinations, intended travels, approximate ground position by utilizing satellites, including
historical information, navigation routes, satellite waypoints, saved addresses, destination
points, location, speed, and other positioning data.


22.     Once the requested search warrants are issued, the Items to be Searched
(Attachment A) will be submitted for forensic analysis, which may not be able to be conducted
locally.   While it may be possible to conduct the search using a range of data analysis
techniques rather than a time-consuming manual search, how long the search will require to
complete cannot be determined until after the forensic analysis has begun.   As a result,
permission is requested to use all available data analysis techniques to locate and retrieve the
evidence described above.   Further, while the undersigned will endeavor to ensure that the
forensic analysis occurs expeditiously, it is anticipated that the forensic analysis will not be
completed within the customary fourteen (14) day period specified in a search warrant.
Accordingly, it is requested that the search warrants authorize agents to execute the search
warrants and conduct the forensic analysis of the Items to be Searched beyond that fourteen
(14) day period.


## ANALYSIS OF ELECTRONIC DATA

23.     The search warrants applied for would authorize the seizure of electronic
storage media or, potentially, the copying of electronically stored information, all under Rule
41(e)(2)(B) of the Federal Rules of Criminal Procedure.

24.     Searching the cellular telephones for the evidence described above may require a range of data analysis techniques.   In some cases, it is possible for agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, agents may be able to execute a "keyword" search that searches through the files stored in a cellular telephone for special words that are likely to appear only in the materials covered in the warrants by looking for particular directory or file names.   In other cases, however, such techniques may not yield the evidence described in the warrants. Suspected criminals have the ability to mislabel or hide information and directories, encode communications to avoid using key words, attempt to delete files to evade detection, or take other steps designed to frustrate law enforcement searches for information.   These steps may require agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrants.   In light of these difficulties, your affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

25.     It should be noted that due to the level of encryption that is anticipated on the Subject Phones, the process to extract the information from the phones may lead to the destruction of the phones themselves.

26.     Because these warrants seeks only permission to examine devices already in law enforcement's possession, the execution of the warrants does not involve the physical

intrusion onto a premise.   As such, I submit there is reasonable cause for the Court to authorize execution of the warrants at any time in the day or night.


## CONCLUSION

**WHEREFORE**, based upon the foregoing, your affiant submits that there is probable cause to believe that the Items to be Searched are evidence of and/or contain evidence of violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846.

DAVID J. TURNER
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me

this _____ day of March, 2019.

HONORABLE JEREMIAH J. McCARTHY
United States Magistrate Judge

15

<u>ATTACHMENT A</u>

ITEMS TO BE SEARCHED

### TELEPHONE 1

Samsung Galaxy S7 edge cell phone, gold in color, Model SM-G935T, IMEI 356164076516677



### TELEPHONE 2

Cricket Galaxy Amp prime cell phone, white in color, Model SM-J320A2, Build # MMB29KJ320A2TUS3AQD2



### TELEPHONE 3

Samsung cell phone, black in color, Model SM-J327T1, Build # NRD90M J327T1UVU1AQF7



**ATTACHMENT B**

**SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED**

Items comprising evidence of, or property designed for use, intended for use, or used in committing violations of Title 21, United States Code, Sections 841(a)(1) and 846 consisting of:

a)   records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to cocaine trafficking, and photographs and videos regarding cocaine trafficking and cocaine trafficking associates contained in the cellular telephones;

b)   text messages and emails contained in the cellular telephones related to cocaine trafficking and cocaine trafficking associates;

c)   records regarding the ownership and/or possession of the searched items; and

d)   Electronic information, data, addresses, maps, and recordings of travels, destinations, intended travels, approximate ground position by utilizing satellites, including historical information, navigation routes, satellite waypoints, saved addresses, destination points, location, speed, and other positioning data.